UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LAUREN LARPENTER and                        CIVIL ACTION
KEVIN P. LARPENTER

VERSUS                                       NO: 21-376

NICHOLAS VERA, ET AL.                        SECTION: "J" (2)

## ORDER & REASONS

Before the Court are two *Motions for Summary Judgment* **(Rec. Docs. 44 &
45)** filed by Defendant, Nicholas Vera. The first motion seeks to dismiss the claims of
Plaintiff, Lauren Larpenter ("Mrs. Larpenter"), and she opposes this motion (Rec.
Doc. 49). The second motion seeks to dismiss the claims of Plaintiff, Kevin Larpenter
("Mr. Larpenter"), and he opposes this motion (Rec. Doc. 50). Vera has filed replies to
each (Rec. Docs. 57 & 60). Having consider the motions and legal memorandum, the
record, and the applicable law, the Court finds that both of Vera's motions should be
granted.

## FACTS AND PROCEDURAL BACKGROUND

This suit arises from an alleged 42 U.S.C. § 1983 violation brought by Mr. and
Mrs. Larpenter against Nicholas Vera, the Terrebonne Parish Consolidated
Government, the Houma-Terrebonne Parish Civic Center, the Houma Police
Department, and the Terre Carnival Club, Inc.

Plaintiffs were attendees at a Mardi Gras ball at the Houma-Terrebonne
Parish Civic Center on or about February 22-23, 2022 from 5:30p.m. to 1:30a.m. The

contract between Terre Carnival Club, Inc. and Terrebonne Parish Consolidated Government states that the Houma Police Department shall provide security for events held at the facilities, to be determined by Civic Center management in consultation with the Houma Police Department. Vera is an officer with the Louisiana Department of Probation and Parole and was hired as security detail for Mardi Gras ball. Vera claims that at approximately 1:30 a.m., he was instructed by management at the Civic Center to get everyone out so that they could lock the building down. The exact details of the moments leading up to the incident at issue are in dispute, but a few facts remain consistent in both Plaintiffs' and Vera's accounts. Vera instructed everyone remaining in the Civic Center that they had to get out. Mr. Larpenter and Vera had a brief exchange, and, after the group failed to exit, Vera again stated that everyone had to leave, or he would have to escort them out. Again, Mr. Larpenter and Vera had a brief exchange and, when, again, the group did not leave, Vera repeated that if everyone did not leave, he would have to escort them out. At this point, Vera alleges that he used a "transport wrist lock" to escort Mr. Larpenter out of the Civic Center, and Plaintiffs allege that Vera "seized Mr. Larpenter's left hand at his wrist and ripped it to the back of his head." Plaintiff claim that Vera then took his right thumb and jabbed it inside Mr. Larpenter's jawbone where the nerve is and yanked Mr. Larpenter back, picked him off the ground and drug him out of the Civic Center." Both agree that Vera released Mr. Larpenter once they were out of the Civic Center.

In response to this incident, Mr. Larpenter filed suit alleging a violation of his civil rights under 42 U.S.C. § 1983 and state law claims, and Mrs. Larpenter filed suit alleging claims of mental anguish, suffering, and loss of consortium as well as *LeJeune* damages under Louisiana state law after witnessing the subject incident. Subsequently, Defendant Nicholas Vera filed the instant motions for summary judgment. Each will be addressed in turn.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would

'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## **BYSTANDER CLAIMS**

Vera argues that Mrs. Larpenter's claims should be dismissed because (1) a bystander who witnesses a police action, but who is not himself an object of that action, cannot recover for any resulting emotional injuries under § 1983[1]; and (2) Mrs. Larpenter has not met her burden of proof for *LeJeune* damages under Louisiana Civil Code article 2315.6. (Rec. Doc. 44-1, at 4–6).

---

[1] Plaintiffs do not dispute that there is no claim for bystander damages under § 1983 so the Court will not address this issue.

4

## I.   LOUISIANA BYSTANDER CLAIM

"The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances." *Trahan v. McManus*, 728 So. 2d 1273, 1279 (La. 1999) (citations omitted). Pursuant to article 2315.6 of the Louisiana Civil Code, a claim for bystander damages is an independent cause of action. *Castille v. La. Med. Mut. Ins. Co.*, 150 So. 3d 614, 619 (La. App. 3 Cir. 2014).

> To recover under this article, a plaintiff must show that: (1) they viewed the event causing injury to the direct victim or came upon the scene soon after; (2) the direct victim suffered such harm that it can reasonably be expected that the plaintiff would suffer serious mental anguish from the experience; (3) the emotional distress plaintiff sustained is both serious and reasonably foreseeable; and (4) plaintiff and the direct victim have the requisite familial relationship.

*Id.* (citing *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559 (La.1990)). Here, Vera does not dispute that Mrs. Larpenter viewed the allegedly injury causing event to Mr. Larpenter, and Vera does not dispute that Mrs. Larpenter has the requisite familial relationship of spouse to Mr. Larpenter. (Rec. Doc. 44-1, at 8). However, Vera argues that Mrs. Larpenter cannot satisfy the remaining two requirements. (*Id.*).

Vera contends that the alleged harm to Mr. Larpenter is not serious enough that one could reasonably expect the observer, Mrs. Larpenter, to suffer serious mental distress. (*Id.*). In opposition, Mrs. Larpenter asserts that her husband has suffered injuries to his left arm, left shoulder, and cervical spine. (Rec. Doc. 49, at 7).

To satisfy this element, the plaintiff must show that he experienced severe and debilitating distress specifically from "the shock caused by the perception of the especially horrendous event." *Simmons v. Hartford Ins. Co.*, 786 F. Supp. 574, 578 (E.D. La. 1992) (quoting *LeJeune*, 556 So.2d at 570 n.11). "The claimant must realize, at the time he witnessed the event, that the injuries are serious" because "[o]therwise the distress would not arise from the perception of the event but rather from being told of the seriousness of the event at some future time." *Id.* (citations omitted). The aim in allowing recovery for bystander damages is to compensate persons who have witnessed harm that is both severe and apparent. *Trahan*, 728 So. 2d at 1279.

In *Lejeune v. Rayne Branch Hospital*, the court found the injuries to be of the type that would reasonably be expected to cause mental pain and anguish because the plaintiff witnessed her husband's comatose body in a hospital bed with rate bites on his face and legs.   556 So. 2d at 571. Moreover, in *Dixon v. Mid-South Rail Corporation*, the plaintiff witnessed her son's death when his vehicle was struck by a train. 580 So. 2d 438, 442 (La. App. 2 Cir. 1991). The court found his injury to be of the type that would reasonably be expected to cause mental pain and anguish because the plaintiff "saw the membrane of his head laying down to the ground." *Id.* In contrast, in *Simon v. Hartford Insurance Co.*, the court found that there was a genuine issue of material fact as to whether the plaintiff knew the injuries were severe. 786 F. Supp. 574, 578 (E.D La. 1992). At the accident scene, the plaintiff stated that he "knew she was hurt and all, but I thought she was going to be okay. I didn't know it was this serious." *Id.* At his deposition, the plaintiff testified that it

6

was not until two-and-a-half hours after the accident at the medical center when the doctor told him "that she was injured very badly and if we didn't get her somewhere soon that she was going to die. That's the first time that the seriousness of this thing really caught up with me. I had no idea that she was injured that bad." *Id.* However, the deposition of a witness at the accident scene described the plaintiff: "[h]e was crying, and he got in the car. He was saying 'Can you hear me? I'm right here for you. I'm going to get you out.' He appeared to have lots of adrenalin." *Id.* Because there was evidence that the plaintiff experienced distress at the accident scene, the court found there was a genuine issue of material fact as to this element. *Id.*

Here, Vera argues that Mr. Larpenter allegedly suffered an injury to the rotator cuff of his left shoulder when Vera allegedly "grabbed [Mr. Larpenter's] arm from behind, jerked it and pinned it behind [his] back." (Rec. Doc. 44-1, at 9) (quoting Rec. Doc. 1, at 4). This alleged injury, Vera contends does not rise to the requisite level of "especially horrendous" because there was no blood, gore, or any other aggravating factor. (*Id.*). In opposition, Mrs. Larpenter simply recites her husband's alleged injuries. (Rec. Doc. 49, at 7). Mrs. Larpenter fails to explain why an arm and shoulder injury are "especially horrendous." There is no allegation whatsoever that she knew that her husband was injured at all during the event, let alone that he was seriously injured. The aim in allowing recovery for bystander damages is to compensate persons who have witnessed harm that is both severe and apparent, and Mrs. Larpenter has failed to present any evidence that Mr. Larpenter's shoulder injury was severe and apparent at the time of the incident. Next, Mrs. Larpenter

described in her deposition hitting and yelling at Vera to let Mr. Larpenter go because she did not know what was going on. She claimed that she was stunned that Vera "dragg[ed] him out," but she does not claim that she was stunned or shocked because of his injury. Yet, like the father in *Simon*, Mrs. Larpenter was yelling "you're hurting him" while Vera removed Mr. Larpenter. (Rec. Doc. 49, at 17). Moreover, she alleges that she was crying and screaming during the incident. (*Id.*). Therefore, the Court finds there is a genuine issue of material fact as to whether Mrs. Larpenter experienced shock caused by the perception of Mr. Larpenter's removal from the Civic Center.

Finally, Vera argues that the alleged emotional distress that Mrs. Larpenter sustained is not severe, debilitating, and foreseeable. (Rec. Doc. 44-1, at 8). "Serious emotional distress, of course, goes well beyond simple mental pain and anguish," and "[a] non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock." *Lejeune*, 556 So. 2d at 570 (citations omitted). However, a diagnosis of a psychiatric disorder is not required. *Blair v. Tynes*, 621 So. 2d 591, 600 (La. 1993). In *Blair v. Tynes*, the court found that the plaintiff met his burden of severe and debilitating emotional distress when, prior to witnessing the accident, he "led an active life and had a good employment record[, but that, after the accident, he] had not worked in the three (3) years that had passed since the accident, and that he had become withdrawn and introverted." *Id.* In *Craighead v. Preferred Risk Mutual Insurance Co.*, the court found that the plaintiff suffered severe and debilitating mental anguish when she missed two weeks of work

and thereafter worked half days with a minimum workload and obtained counseling. 769 So. 2d 112, 123 (La. App. 2 Cir. 2000).

Here, Vera argues that Mrs. Larpenter has not provided any evidence showing a substantial or dramatic change in her life as result of the incident. (Rec. Doc. 44-1, at 10). In her deposition, she testified that she has not sought treatment with a psychiatrist, counselor, or any other form of mental health specialist as a result of the incident. (Rec. Doc. 44-3, at 6). Additionally, Mrs. Larpenter testified that she has not taken any medication as a result of the incident, and she has not had any nightmares. (*Id*.). She testified that she has not been diagnosed with a mental disorder, contemplated suicide, or contemplated hurting herself. (*Id*. at 7). In opposition, Mrs. Larpenter cites to her deposition testimony in which she stated that the incident "added stress to our normal daily lives and added conversations about things that both of us wish was not pertinent or part of our life." (Rec. Doc. 49, at 17). Additionally, she claims that she is feeling ostracized by her friends and family in the Terreanians Carnival Club because Plaintiffs have been told they are prohibited from any of the functions. Moreover, Mrs. Larpenter spends a great deal of her opposition explaining the importance of the Terre Carnival Club to her family and how distressing it is that they can no longer attend the events.

The Court finds that the majority of the emotional distress experienced by Mrs. Larpenter is related to her no longer being a part of the Terre Carnival Club and no longer being able to attend their functions. This prohibition results from the President of the Terre Carnival Club prohibiting them from the functions due to Mr.

9

and Mrs. Larpenter bringing suit against the organization. The Court finds Mrs. Larpenter has not created a genuine issue of material fact that her husband's injury caused her emotional distress. Her emotional distress was brought about by suing the Terre Carnival Club and her exclusion from their events.

## II.   LOSS OF CONSORTIUM

Mrs. Larpenter argues that she is entitled to damages for loss of consortium. (Rec. Doc. 49, at 10). Notably, all of her arguments focus on the "sufficiency of her pleadings" and that she has a "cognizable claim." (*Id*. at 11). However, the standard she is referencing is used for Motions to Dismiss under Rule 12(b)(6), not Motions for Summary Judgment under Rule 56. As the non-movant with the burden of proof at trial for this issue, she had to submit or refer to evidence that set out specific facts to show a genuine issue exists. Specifically, Mrs. Larpenter contends she is seeking damages for (1) the stress and strain on her relationship with her husband; (2) her heightened duties to care and assist her husband due to his disabling injuries while also raising a child and working; and (3) the ostracization, anguish, and isolation from not being welcomed in the Krewe of Terreanians. (*Id*. at 13–14). However, she presents limited evidence, such as her answers to two interrogatories and several sentences from her deposition. (*Id*. at 11–12); (Rec. Doc. 55, at 5).

Vera argues that in Mrs. Larpenter's deposition, when asked what her husband could not do after the incident that he could do before, she testified that "[h]e cannot get the decorations out of the attic for me . . . [t]here are so many little things. I'm just trying to – that's it, off the top of my head." (Rec. Doc. 55, at 5). When asked

if her husband spends less time with her since the incident, Mrs. Larpenter stated, "[n]o. he's a very good husband." (*Id.*). Vera contends that Mrs. Larpenter cannot point to anything that her husband cannot do around the house that he could do beforehand or how his alleged injuries have negatively impacted their relationship other than a generalized statement that it added stress to their lives. As the nonmovant, Mrs. Larpenter simply had to submit evidence that set out specific facts to show that a genuine issue exists. She has failed to do so. Therefore, the Court finds that Mrs. Larpenter's claim for loss of consortium should be dismissed.

## § 1983 CLAIMS

Vera argues that because he is entitled to qualified immunity regarding Mr. Larpenter's § 1983 claims and discretionary immunity regarding Mr. Larpenter's state law claims, Mr. Larpenter's claims should be dismissed. (Rec. Doc. 45-1, at 6, 10). In opposition, Mr. Larpenter contends that Vera is not entitled to qualified immunity or discretionary immunity. (Rec. Doc. 50, at 15, 17).

### I.   QUALIFIED IMMUNITY

To begin, it must be noted that "[a] qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted). "Once a defendant properly invokes qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to the doctrine's protection." *Howell v. Town of Ball*, 827 F.3d 515, 525 (5th Cir. 2016). "To defeat qualified immunity, the plaintiff must show that the official's conduct was objectively unreasonable in light of a clearly established rule of law." *Vincent v. City*

*of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "Even when an official is not entitled to summary judgment on the merits – because the plaintiff has stated a proper claim and genuine issues of fact exist – summary judgment can still be granted when the law is not reasonably clear." *Jamison v. McClendon*, 476 F. Supp. 3d 386, 405 (S.D. Miss. 2020). This is a significant hurdle: qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam).

The Fifth Circuit applies the following legal standard: "[f]irst, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second  . . . the court must decide whether the right at issue was clearly established at time of the defendant's alleged misconduct." *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). However, courts are not required to address these steps in sequential order. *Id.*

In Fourth Amendment cases, determining whether an official violated clearly established law necessarily involves a reasonableness inquiry.[2] *Id.* In *Pearson v. Callahan*, the Supreme Court explained that an officer is "entitled to qualified immunity where clearly established law does not show that the conduct violated the Fourth Amendment." 555 U.S. 223, 232 (2009). This is a determination which "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* However, "a reasonably

---

[2] Here, Mr. Larpenter alleges violations of his Fourth, Fifth, and Eighth Amendment rights. (Rec. Doc. 1, at 5). However, because he is alleging false arrest and excessive force, his claims are properly analyzed under the Fourth Amendment.

competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982). In general, "the doctrine of qualified immunity protects government officials from . . . liability when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question beyond debate." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).

Neither party disputes the constitutional principles underlying Mr. Larpenter's constitutional claims—the Fourth Amendment right to be free from unlawful arrest and detention as well as the Fourth Amendment right to be free from excessive force during a seizure. Because neither party disputes the clarity of the underlying Fourth Amendment rights, both the first and the second prong of the qualified immunity analysis "necessarily involves a reasonableness inquiry." *Heaney*, 846 F.3d at 801. Mr. Larpenter must show that Vera acted unreasonably to demonstrate a Fourth Amendment violation in the first place. *See, e.g., Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("As the text indicates and we have repeatedly affirmed, the ultimate touchstone of the Fourth Amendment is reasonableness."). Then, when determining whether a constitutional right was clearly established—that is, whether Vera could have reasonably believed that his "conduct was not barred by law," Mr. Larpenter again has to demonstrate that Vera's actions were unreasonable.

In each instance, the reasonableness inquiry is "an objective one." *Harlow*, 457 U.S. at 818. "The relevant question . . . is whether a reasonable officer could have believed" his actions "to be lawful" under the Fourth Amendment "in light of clearly

established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Because of the central role that reasonableness plays in the qualified immunity inquiry, Vera focuses his arguments on the reasonableness of his actions in light of the information he had available to him at the time of the incident.

Vera asserts that he was hired as security for the Mardi Gras ball, and, at the end of the night, was instructed by the Civic Center's management to remove all remaining guests from the building so they could lock up. (Rec. Doc. 45-1, at 2). However, Mr. Larpenter contends that there is no evidence other than Vera's own account that the Civic Center's management instructed Vera to remove patrons or tell them to leave. (Rec. Doc. 50, at 9–10). However, both Vera and another officer testified that the Civic Center management asked them to get all of the patrons out of the building. (Rec. Doc. 45-4, at 4–5); (Rec. Doc. 50-14, at 91–92). Nonetheless, what Vera and Mr. Larpenter agree on is that Vera was present as security by virtue of a contract of lease between the Terre Carnival Club and the Civic Center. (*Id.* at 4). Additionally, the only consistency between Vera and Mr. Larpenter's timeline of events is that Vera told everyone to leave multiple times. (*Id.* at 19).

Vera alleges that he made an announcement in the main hall that everyone needed to leave. (Rec. Doc. 45-1, at 3). Next, after a group remained, Vera claims that he approached the group and asked them again to leave the building. (*Id.*). At this point, Vera contends that Mr. Larpenter took an aggressive posture and called him an asshole. (*Id.*). In response, Vera alleges that he repeated, for a third time, his

request that everyone leave, and Mr. Larpenter responded with a "fuck you." (*Id.*). Vera, believing Mr. Larpenter to be under the influence of alcohol, and now having repeatedly ignored his requests to leave, used a "transport wrist lock" to escort him out of the Civic Center. (*Id.* at 3–4).

Mr. Larpenter alleges that Vera used profanity when telling everyone to leave (Rec. Doc. 50, at 4–5). When Vera removed Mr. Larpenter from the building, Mr. Larpenter claims that Vera "ripped" his left hand to the back of his head and took his right-hand thumb and "jabbed it inside Mr. Larpenter's jawbone." (*Id.* at 5). As he was removed, Mr. Larpenter alleges that Vera picked him up off the ground and drug him out. (*Id.* at 5–6). On a summary judgment motion, this Court must credit Mr. Larpenter's account of events as the nonmovant. Nonetheless, the plaintiff must show that the official's conduct was objectively unreasonable in light of a clearly established rule of law, and immunity is not denied unless existing precedent places the constitutional question beyond debate. Mr. Larpenter claims that Vera was cursing at patrons at the end of the evening while telling them that they needed to leave. Mr. Larpenter alleges that he told Vera that he "didn't need to speak to the women in that tone of voice," and Mr. Larpenter then turned to his wife and said, "this is crazy." Mr. Larpenter claims that he said to Vera "[w]e are leaving the Civic Center, we are trying to get out of here, and we are being pressured to get out of here now. We understand, we get it." However, after stating all of this to Vera, Mr. Larpenter alleges that he "turned around" to "grab something else from the table," and it was at this point that Vera grabbed him.

Vera relies upon *Heaney v. Roberts* to show that his actions were reasonable. (Rec. Doc. 45-1, at 8). In *Heaney*, the Fifth Circuit held that an officer was entitled to qualified immunity after escorting the plaintiff out of the room and briefly detaining him. *Heaney v. Roberts*, 846 F.3d 795, 805 (5th Cir. 2017). At a parish council meeting, the council president told the plaintiff that his time to talk was up, and he requested that the plaintiff be removed from the meeting. *Id.* at 799. The defendant officer responded to this request by the council president and approached the plaintiff and indicated that he needed to move. *Id.* The plaintiff walked away up the aisle and alleged that the defendant continued to force him from the council chambers. *Id.* Moreover, he alleged that the defendant shoved him forward, causing him to fall to the floor. *Id.* After getting up, the plaintiff claimed that the defendant seized him by the arms and forcibly ejected him from the chambers. *Id.* The Fifth Circuit found that the defendant was "responsible for responding to requests by the council president to address disruptions." *Id.* The defendant "also reasonably believed he had legal authority to keep the peace at meetings and in the building." *Id.* The court found that it was "not objectively unreasonable for [the defendant] to respond to [the council president's] request and escort [the plaintiff] out of the room or to briefly detain [him] while consulting with his supervisor." *Id.* In response, Mr. Larpenter argues that *Heaney* is distinguishable from the instant case, but he fails to assert any precedent that establishes the contours of this right beyond debate. (Rec. Doc. 50, at 17).

First, Mr. Larpenter cites to *Ikerd v. Blair*, 101 F.3d 430 (5th Cir. 1996) for the proposition that the force used by Vera was brutal, disproportionate, and clearly and

objectively unreasonable. (*Id.* at 15). In *Ikerd*, the Fifth Circuit held that the evidence presented was sufficient for a reasonable jury to conclude that the officer used objectively unreasonable force. 101 F.3d at 434. The court explained that the officer "acknowledged that there was no need to use any physical force against [the plaintiff]," and she was not under arrest or posing a threat to anyone. *Id.* Moreover, the officer was a 300-pound man who violently jerked the plaintiff, a ten-year-old girl, out of her living room chair and dragged her into another room. *Id.* The facts here are not akin to those in *Ikerd*. Unlike the plaintiff in *Ikerd*, Mr. Larpenter is not a ten-year-old girl. The evidence indicates that he is a full grown, adult man. Additionally, unlike the plaintiff in *Ikerd*, Mr. Larpenter was talking back to Vera and ignoring Vera's request that everyone leave the Civic Center. Finally, unlike the office in *Ikerd*, Vera does not acknowledge that he used objectively unreasonable force.

Next, Mr. Larpenter cites to *Saenz v. G4S Secure Solutions (USA), Inc.*, 224 F. Supp. 3d 477 (W.D. Tex. 2016). In *Saenz*, the court found that the prison guard used excessive force on a pretrial detainee who died in custody because "[s]everal judicial decisions suggest that tasing and beating a restrained detainee – resulting in head lacerations and profuse bleeding – and subsequently dragging him is constitutionally impermissible." *Id.* at 484. *Saenz*, for many reasons, is not applicable to Mr. Larpenter's case. Finally, Mr. Larpenter does not cite a single case dealing with security officers at private events. Instead, he simply compares the seizures in *Heaney*, *Ikerd*, and *Saenz* with the alleged seizure here, and conclusively states that

Mr. Larpenter's seizure was "brutal, unrelenting, humiliating, and completely disproportionate." (*Id.*).

The Court begins its analysis with the observation that it is not clear that Mr. Larpenter's conduct would rise to the level of constituting probable cause as required under the Fourth Amendment for a seizure. However, the Court is not persuaded that this particular seizure, like the seizure in *Heaney*, had to be supported by probable cause pertaining to a crime because Vera was working as the security detail for a private event in which the Terre Carnival Club rented the Civic Center. (Rec. Doc. 45-1, at 2). The rental agreement states that the Civic Center "reserves the right for itself and for its agents or security to remove any objectionable person or persons from the Facilities . . . the Lessor [Civic Center] may, at its sole option, remove such person." (Rec. Doc. 50-2, at 4). Vera contends that his supervisor at the time of the incident was the Civic Center management. (Rec. Doc. 45-1, at 2–3). Moreover, both Vera and another officer testified that the Civic Center management asked them to get all of the patrons out of the building. (Rec. Doc. 45-4, at 4–5); (Rec. Doc. 50-14, at 91–92). Pursuant to the rental agreement, "[t]he Houma Police Department shall provide required security for events held at the Facilities, to be determined by Civic Center Management in consultation with the Houma Police Department." (Rec. Doc. 50-2, at 3). The Civic Center contracted with the Houma Police Department for security for events, but, the evening of the incident at issue, Vera was hired to work a private security detail under the terms of the rental agreement. Pursuant to the rental agreement, security could remove "objectionable person or persons from the

Facilities." This is what Vera did when he removed Mr. Larpenter. Thus, probable cause was not required under the Fourth Amendment.

Next, even if probable cause was required, and Vera lacked the requisite probable cause to believe that Mr. Larpenter had broken the law, the Court is persuaded that Vera acted reasonably in light of objective factors available to him. Despite the differences in the events told by Vera and Mr. Larpenter, a few details remain consistent. First, Vera instructed the group multiple times that the Civic Center was closing, and they needed to leave. Second, the group did not leave after being asked to do so multiple times. Third, the group had been drinking that evening. And fourth, Mr. Larpenter both talked back to and turned his back to Vera after being told to leave. Thus, Vera pulled Mr. Larpenter's arm behind his back and removed him. Mr. Larpenter was detained for a brief period as he was removed, according to Mr. Larpenter, more than 400 feet from inside the Civic Center to just outside of it. Mr. Larpenter was immediately released once outside. Once released, Mr. Larpenter was free to leave. In light of the objective facts available to Vera, the Court finds that the seizure was brief, minimally intrusive, and reasonable under the totality of the circumstances when Vera was faced with, in his perception, inebriated and uncooperative patrons. Moreover, Mr. Larpenter, as the party with the burden of proof, has not shown that Vera's conduct was objectively unreasonable in light of a clearly established rule of law.

## II.   DISCRETIONARY IMMUNITY

Next, Mr. Larpenter asserts state law claims of assault, battery, and negligence against Vera. (Rec. Doc. 1, at 8). In response, Vera argues that he is entitled to discretionary immunity because his acts were not criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant. (Rec. Doc. 45-1, at 12). In opposition, Mr. Larpenter contends that Vera's actions were just that. (Rec. Doc. 50, at 17). Pursuant to Louisiana Revised Statute § 9:2798.1, "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." However, discretionary immunity shall not apply when the acts or omissions "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. Rev. Stat. § 9:2798.1(C)(2).

As the Court has already found, Vera's actions were reasonable under the totality of the circumstances, and therefore, Vera's acts did not constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant, Nicholas Vera's, *Motion for Summary Judgment* **(Rec. Doc. 44)** is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims of Plaintiff, Lauren Larpenter, against Defendants, Nicholas Vera; Houma Police Department; Terrebonne Parish Consolidated Government; Terre Carnival Club, Inc.; and Houma-Terrebonne Civic Center, are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant, Nicholas Vera's, *Motion for Summary Judgment* **(Rec. Doc. 45)** is **GRANTED.**

**IT IS FURTHER ORDERED** that all claims of Plaintiff, Kevin P. Larpenter, against Defendants, Nicholas Vera; Houma Police Department; Terrebonne Parish Consolidated Government; Terre Carnival Club, Inc.; and Houma-Terrebonne Civic Center, are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 12th day of August, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

21