UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEVIN P. LARPENTER AND LAUREN LARPENTER | CIVIL ACTION |
| VERSUS | NO: 21-376 |
| NICHOLAS VERA ET AL. | SECTION: "J"(2) |

## ORDER AND REASONS

Before the Court are a *Motion for Partial Summary Judgment* **(Rec. Doc. 83)** filed by Defendant Nicholas Vera, and a tardy opposition (Rec. Doc. 84) filed by Plaintiff Kevin Larpenter,[1] to which Defendant has replied (Rec. Doc. 85). Having considered the motion, the legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

This suit arises from an alleged 42 U.S.C. § 1983 violation brought by Kevin and Lauren Larpenter against Nicholas Vera, the Terrebonne Parish Consolidated Government, the Houma-Terrebonne Parish Civic Center, the Houma Police Department, and the Terre Carnival Club, Inc. Only Kevin Larpenter and Nicholas Vera remain in this action.

The Larpenters were attendees at a Mardi Gras ball at the Houma-Terrebonne

---

[1] Without seeking leave of Court, Plaintiff filed his opposition at 7:16 p.m. on March 12, 2025. Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition with citations of authorities be filed and served no later than eight days before the noticed submission date. Defendant set his Motion for Partial Summary Judgment for submission on March 19, 2025, making Plaintiff's deadline to oppose March 11, 2025. Although the opposition was filed two working days late, the Court considers the filing out of an interest of justice. Plaintiff is directed to more carefully follow the Local Rules in all future filings.

1

Parish Civic Center on February 22–23, 2020 from 5:30 p.m. to 1:30 a.m. Vera is an officer with the Louisiana Department of Probation and Parole and was hired by the Civic Center as security detail for the Mardi Gras ball. At the conclusion of the ball, Plaintiff began transporting props and decorations from the Civic Center to his vehicle. While ferrying the carnival supplies, Plaintiff observed Defendant aggressively yelling at other patrons to vacate the Civic Center. At this point, parties' factual recollections significantly diverge. Plaintiff insists he calmly counseled Defendant to speak more respectfully to attendees, but was responded to with now-personally directed obscenities. Defendant, instead, recalls Plaintiff drunkenly defying repeated orders to leave the premises, approaching Defendant to curse him out and returning to the Civic Center against express orders on at least two additional occasions.

Although the catalyzing events are in dispute, their result is not. Plaintiff, with his back turned to collect more table decorations, was "suddenly and without warning" grabbed by Defendant, placed in a "transport wrist lock," and forcibly brought out of the Civic Center. (Rec. Doc. 1 at 4 ¶ 11). Both further agree that Defendant released Plaintiff once they were out of the Civic Center.

In response to the incident, Kevin Larpenter filed this action alleging a violation of his civil rights under 42 U.S.C. § 1983 and state law claims. Lauren Larpenter also joined as a named plaintiff, alleging claims of mental anguish, suffering, loss of consortium, and LeJeune damages under Louisiana state law after witnessing the incident. Vera separately moved for summary judgment against each

2

Plaintiff. This Court granted the motions, finding as to Kevin Larpenter's claims that Vera was entitled to federal qualified immunity and state discretionary immunity. Additionally, this Court determined Lauren Larpenter failed, as a matter of law, as to her entitlement to bystander and loss of consortium damages. Finally, the Court dismissed all claims against remaining Defendants.

On appeal, the Fifth Circuit Court of Appeals reversed on both federal and state qualified immunity findings. Minimally, the appellate court determined, genuine issues of material fact remain as to the probable cause for and the objective unreasonableness of Vera's actions. The causes of action raised by Lauren Larpenter and against Defendants other than Vera, however, were abandoned on appeal. In sum, Kevin Larpenter's federal and state law claims against Vera alone remain.

Defendant Vera now moves for partial summary judgment on state law claims of assault and negligence. Plaintiff opposes.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th

Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

As Defendant moves for summary judgment, facts in dispute are considered in a light most favorable to Plaintiff, the nonmovant. Nonetheless, even in this favorable light, Plaintiff fails to present redressable Louisiana assault or negligence claims.

**A. Louisiana Tort of Assault**

Under Louisiana law, assault is an intentional tort, actionable through application of Louisiana's general tort basis: Louisiana Civil Code Article 2315. *Doss v. Morris*, 86 F. App'x 25, 27 (5th Cir. 2004); *see also* La. Civ. Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it

4

happened to repair it."). An assault occurs when an intentional threat of battery, or harmful or offensive contact, places one in reasonable apprehension of receiving physical injury. *Gressett v. Sw. Airlines Co.*, 216 F. Supp. 3d 743, 750 (E.D. La. 2016) (citing, *inter alia*, *McVay v. Delchamps, Inc.*, 97-860 (La. App. 5 Cir. 1/14/98), 707 So. 2d 90, 93). Louisiana courts weigh the reasonableness of that apprehension based on the surrounding circumstances. *See, e.g., Bouton v. Allstate Ins. Co.*, 491 So. 2d 56, 57 (La. App. 1st Cir. 1986) (emphasis original) ("Although it is *possible* for one who opens his door to trick-or-treaters on Halloween to become so frightened that he believes a battery is imminent, under the circumstances here, such an apprehension is not reasonable."). Thus, words alone are an insufficient basis for assault; rather, "threats coupled with the present ability to carry out the threats" so as to create a reasonable apprehension of injury are needed. *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So. 2d 1012, 1020 (La. App. 2d Cir. 1987), *writ denied*, 512 So. 2d 1183 (La. 1987) (citing *Castiglione v. Galpin,* 325 So. 2d 725 (La. App. 4th Cir. 1976); *State in Interest of Cortez,* 319 So. 2d 496 (La. App. 4th Cir.1975)).

Here, parties agree Plaintiff's back was turned when Defendant made contact with him. In fact, the Complaint allegation—which is accepted as true for purposes of this motion—describes Defendant's action as performed "suddenly and without warning". (Rec. Doc. 1 at 4 ¶ 11). Plaintiff argues, however, his lack of contemporaneous apprehension is not dispositive. He provides two primary rationales.

First, Defendant's words themselves were enough to alert him to possible

physical harm. Without providing any testimonial support, Plaintiff contends that his bodily positioning does not mean he "was not intimidated or unsettled." (Rec. Doc. 84 at 2). Rather, viewed in a light most favorable to Plaintiff, Defendant's aggressive words to other ball attendees and to Plaintiff himself would be enough for a reasonable jury to conclude an assault occurred: "Vera's statement of 'I'm going to f-ing escort you out of here' is certainly a threat of contact, which in this case, is unreasonable and unlawful." *Id.* at 3.

Plaintiff's argument is unavailing. Nowhere in his deposition does Plaintiff state he was aware of the prospect of an unwanted and injurious physical touch. Instead, he understood Defendant's words simply to demand ball attendees exit the Civic Center. As he recalled the events immediately preceding his removal:

> We are leaving the Civic Center, we are trying to get out of here and we are being pressured to get out of here now. We understand, we get it. I turned around, I went to grab something else from the table, and I was immediately grabbed from behind.

(Rec. Doc. 83-2 at 6–7 ll.22–2). This conclusion is further supported by Plaintiff's uniform threat allegation: Defendant declared he would "escort" attendees out of the Civic Center. *Id.* at 5 l.17; 6 ll.3, 20; 10 l.15. No matter its alleged intensifying adverb "f-ing", the verb "escort" is hardly threatening. Fundamentally, "to escort" means to accompany one person from one location to another, possibly out of a security concern. *See* THE OXFORD ENGLISH DICTIONARY, *Escort* (3d ed. 2004) ("To accompany (a person or group) on a journey, visit, etc., typically for protection, security, guidance, or as a mark of rank or expression of courtesy; to accompany or conduct (someone) to or from a place."). Even Defendant's aggressive use of the term would not present a

6

reasonable apprehension of forthcoming physical injury.

Second, and more confoundingly, Plaintiff attempts to tie his assault claim to Defendant's assessment of Plaintiff's own behavior. The circular reasoning spins as follows: Defendant Vera stated in his deposition that Plaintiff Kevin Larpenter appeared to be "getting ready for a fight"; therefore, based on that appearance, Plaintiff must have apprehended the possibility of forthcoming physical harm from Defendant. (Rec. Doc. 84 at 3 (citing Rec. Doc. 84-3 at 2)). Put another way, Plaintiff avers a jury could "latch[] on to [sic]" Defendant's assessment of Plaintiff's understanding of the situation. *Id.* at 2. This strained logic cannot preserve Plaintiff's assault claim. Plaintiff asserts that he was calm during the encounters with Defendant, (Rec. Doc. 1 at 4 ¶ 10), that the issues were "trivial", (Rec. Doc. 84 at 2), and that he responded to Defendant's words by retrieving additional items in an effort to leave the Civic Center, (Rec. Doc. 1 at 4 ¶ 11). No reasonable jury could divine an assault therefrom.

These circumstances are even less extreme than those found in *Groff v. Southwest Beverage Co.* Therein, the Louisiana Third Circuit Court of Appeal affirmed the trial court's grant of summary judgment to the defendant on the issue of assault. *Groff v. Sw. Beverage Co.*, 2008-625 (La. App. 3 Cir. 11/5/08), 997 So. 2d 782. At the conclusion of a company meeting, the plaintiff was asked by his supervisor to remain behind in order to answer for disruptive meeting behavior. *Id.* at 785. The supervisor, separated from the plaintiff by a desk, demanded an apology from the plaintiff to the meeting presenter, yelling obscenities to drive home his point. *Id.* As

7

he spoke, the supervisor pounded the desk with his fist. *Id.* The plaintiff-employee eventually answered with his own obscenity-laced rejoinder. *Id.* at 785–86. Rejecting any reasonable apprehension of receiving a battery, the appellate court determined a tirade alone was insufficient to present a genuine issue of material fact as to an assault. The court observed no verbal threat of physical harm, no weapon revealed, and no posturing of attack. *Id.* at 787–78. An exchange of obscenities and the plaintiff's self-serving statements could not surmount the summary judgment burden. *Id.* at 788.

The same is true here. From Plaintiff's retelling, Defendant lobbed obscenities his way. But Defendant never moved threateningly until he grabbed Plaintiff from behind to remove him. Defendant cannot both catch Plaintiff unawares—"suddenly and without warning" after a "trivial" episode—and inflict an assault. Extended suppositions, founded on Defendant's assessment of Plaintiff's apprehension of the circumstances, cannot create the reasonable possibility of an assault. Plaintiff fails his summary judgment burden. The assault claim must be dismissed as a matter of law.

### B. Louisiana Tort of Negligence

Plaintiff's argument to preserve his negligence action is even less convincing. Reciting Louisiana's duty-risk scheme, Plaintiff contends there is factual support for all elements of a negligence claim. Plaintiff, however, avoids distinctions Louisiana courts have repeatedly drawn between causes of action that arise from intentional acts and those from negligence.

In a series of opinions, then-Louisiana Supreme Court Justice James Dennis explained the Louisiana Legislature's line-drawing efforts between intentional and negligent acts in a workers' compensation context. *See Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981) (Dennis, J.); *Caudle v. Betts*, 512 So. 2d 389 (La. 1987) (Dennis, J.); *see also Citizen v. Theodore Daigle & Bro., Inc.*, 418 So. 2d 598, 602 (La. 1982) (Dennis, J., concurring). The civilian demarcation, Justice Dennis reasoned, is not based on the intent of the act itself but, rather, the intent for the result of the action:

> The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.

*Bazley*, 397 So. 2d at 481. Therefore, the intent to make the harmful or offensive contact—not necessarily that the contact *be* harmful or offensive—separates battery from negligence. *See Caudle*, 512 So. at 391. Where the complained-of act is intentional, to characterize it as negligence rather than a battery "defies logic." *Schexnayder v. Fed Ventures*, 625 So. 2d 530, 534 (La. App. 5th Cir. 1993). No matter how a plaintiff characterizes the claim, Louisiana courts at the summary judgment stage do not merely accept allegations of intentional acts "couched in terms of negligence." *Id.*; *see also Wallace v. Huber*, 597 So. 2d 1247, 1249 (La. App. 3d Cir. 1992) ("The bedrock of plaintiff's action stems from the alleged assault and battery regardless of how her cause of action is couched.").

Here, parties agree that Defendant intentionally made contact with Plaintiff by "grabb[ing] petitioner's left arm from behind" and removing him from the Civic

9

Center. (Rec. Doc. 1 at 4 ¶ 11). More specifically, Defendant stated he used a "transport wrist lock" in response to Plaintiff's refusal to comply with his orders to exit. (Rec. Doc. 83-3 at 10). Intending the contact, Defendant, if anything, performed an intentional tort. Plaintiff's negligence claim, thus, fails as a matter of law and must be dismissed.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion for Partial Summary Judgment* **(Rec. Doc. 83)** is **GRANTED**.

New Orleans, Louisiana, this 19th day of March, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE